UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN BORER, JR. O/B/O
WAYNE ADAM BORER, DECEASED,

                Plaintiff,

   v.                                         **DECISION AND ORDER**
                                                     10-CV-962S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

      1.      Plaintiff John Borer, Jr., on behalf of Wayne Adam Borer, challenges an Administrative Law Judge's ("ALJ") determination that the deceased, Mr. Wayne Borer, was not disabled within the meaning of the Social Security Act ("the Act").  Decedent was allegedly disabled as of January 2, 2001, due to blindness.  Plaintiff contends that this impairment rendered decedent unable to work, and therefore asserts that decedent was entitled to payment of Disability Insurance Benefits ("DIB") by virtue of disability or statutory blindness under Title II of the Act.

      2.      Decedent filed a Title II application for DIB payments on October 26, 2007. His application was initially denied on January 11, 2008, after which he timely filed a request for a hearing.  Prior to such a hearing being held, decedent passed away from an unrelated illness.  On October 20, 2009, decedent's father filed a Notice of Substitution of Party Upon Death of Claimant.  Thereafter, decedent's father designated Plaintiff, decedent's brother, to prosecute this claim.  An administrative hearing was then held before ALJ Robert T. Harvey at which Plaintiff appeared with counsel and testified.  The ALJ considered the case *de novo*, and on November 3, 2009, issued a decision denying Plaintiff's application for benefits.  Plaintiff filed a request for review with the Appeals

Council, which, on October 21, 2010, denied Plaintiff's request for review.  Plaintiff filed the current civil action on November 29, 2010, challenging Defendant's final decision.[1]

3. On June 8, 2011, the Commissioner and Plaintiff both filed motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Briefing of the motions concluded on July 15, 2011, at which time this Court took the motions under advisement without oral argument.  For the reasons set forth below, the Commissioner's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen,

---

[1] The ALJ's November 3, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

  6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

  7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ found that decedent last met the insured status requirements of the Act on September 30, 1993.  (R. at 14.)[2]  The ALJ further found that benefits based on blindness would require Plaintiff to establish that decedent was blind on or before December 31, 2006.  (Id.)  The ALJ then found that decedent was not legally blind and also that he had not been under a disability prior to his date last insured ("DLI"), September 30, 1993.  (R. at 15.)

10.     Plaintiff argues that the ALJ's decision must be reversed because he erred in determining that Plaintiff was not blind and substituted his opinion for that of the treating physicians' expert medical opinions.  Plaintiff also argues that the ALJ erred in not considering the opinion of the New York State Department of Social Services Commission

---

[2] Citations to the underlying administrative record are designated as "R."

for the Blind and Visually Handicapped ("State Commission") that found decedent blind.[3]

11.  A claimant is considered statutorily blind under the regulations if he or she has "central visual acuity of 20/200 or less in the better eye with the use of correcting lens." 20 C.F.R. § 404.1581. Further, an eye that suffers from a limitation in the field of vision "so that the widest diameter of the visual field subtends an angle no greater than 20 degrees is considered to have a central visual acuity of 20/200 or less." Id. Lastly, a claimant's blindness must meet the regulations' durational requirement. 20 C.F.R. § 404.1509 (impairments not expected to result in death must have lasted or be expected to last for continuous period of at least 12 months).

12.  After reviewing the ALJ's decision, this Court finds no error requiring remand. The ultimate determination of whether a plaintiff meets the statutory definition of disability is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(1). However, "[i]n analyzing a treating physician's report, the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." Rosa, 168 F.3d at 79 (quotation marks omitted). Here the ALJ considered the opinions of both decedent's treating physicians, Doctors Michael Johnson and Saralyn Notaro Rietz. Dr. Johnson opined that decedent was blind and determined that decedent's visual acuity was variously 20/300 and 20/400, well within

---

[3] Plaintiff also argues that because the ALJ erred in not finding Plaintiff blind, he also improperly determined decedent's DLI. As the ALJ's opinion makes clear, whether decedent was disabled for being statutorily blind or for meeting the criteria for disability are separate analyses, subject to different standards. The DLI for purposes of being "disability insured" was September 30, 1993. (R. at 12, 14); see also 42 U.S.C. § 423(d)(1). By contrast, the DLI for purposes of being "fully insured" as statutorily blind was December 31, 2006. (R. at 12, 14); see also 42 U.S.C. 416(i). This comports with Plaintiff's own assertion that his DLI was December 31, 2006, as well as the ALJ's decision. (Pl.'s Reply 1, Docket No. 14; R. at 14.) Nevertheless, Plaintiff still argues that the ALJ improperly calculated decedent's DLI as September 30, 1993. (Pl.'s Reply at 3.) Having provided nothing more by way of explanation, this Court can only surmise that Plaintiff has misinterpreted the ALJ's own decision. Further, Plaintiff's arguments all revolve around his being entitled to benefits on the basis of decedent's statutory blindness. Thus, this Court will not further consider whether decedent might also have been entitled to benefits for having medically determinable impairments rendering him disabled. (R. at 15.)

the range of statutory blindness. But as the ALJ observed, Dr. Johnson's notes did not make clear whether this was with or without correcting lens. Specifically, on November 9, 2005 a visual acuity of 20/400 was recorded, which was changed from "SC" (without correction) to "CC" (with correction) and was changed from either "OD" (right eye) to "OS" (left eye), or vice versa. (R. at 152.) On November 22, 2005, decedent's visual acuity was recorded as 20/300, but did not indicate whether this was with or without correcting lens. (Id.) Then, on December 22, 2005, a visual acuity rating without correction was recorded as 20/CF and 20/300. (R. at 153.)[4] The ALJ then inferred from the low visual acuity readings in all the entries that decedent's visual acuity was taken without correcting lens, and found Dr. Johnson's opinion to be entitled to little weight. (R. at 15.) Although Plaintiff points to various parts in the record that Dr. Johnson found decedent legally blind, these citations refer to ratings that fail to distinguish between SC and CC, and thus do not alter the ALJ's findings. (Pl.'s Mem. 5-6, Docket No. 8-1.)

Nevertheless, Dr. Johnson's failure to differentiate between SC and CC might, in itself, provide grounds on which to remand this action for clarification, were it not for the opinion of Dr. Rietz. See 20 C.F.R. § 404.1512(e) ("When the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled . . . . [w]e will first recontact your treating physician . . . to determine whether the additional information is readily available); Ayers v. Astrue, No. 08-CV-69A, 2009 WL 4571840 (W.D.N.Y. Dec. 7, 2009) (citing Rosa, 168 F.3d at 70, n.5) ("Only if the ALJ cannot determine whether a claimant is disabled based upon existing evidence does the duty to

---

[4]"CF" appears to stand for "count fingers" and is used when a patient's vision is worse than 20/400. (Def.'s Mem. 6, n. 2 Docket No. 7.)

recontact arise."). In a letter dated September 28, 2005, Dr. Rietz noted that decedent's visual acuity, with correction, in the right eye was 20/80. (R. at 158.) Another measurement on August 22, 2006 found that decedent's visual acuity in the right eye was 20/30+2. (R. at 154.) These ratings are far better than those which would support a finding of statutory blindness, and the ALJ accordingly gave Dr. Rietz's opinion significant weight. (R. at 15.)

Having reviewed the record, this Court finds that the ALJ was entitled to rely on that opinion. 20 C.F.R. § 404.1527(d)(2) (ALJ must give controlling weight to treating physician's opinion where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record"). Unlike Dr. Johnson's notes, Dr. Rietz's letters clearly list the decedent's visual acuity in the right eye with corrective lens. There are no grounds on which to find that the ALJ improperly substituted his own opinion for that of Dr. Rietz's expert medical opinion. The ALJ simply compared the doctor's findings to the regulation's statutory requirements. Plaintiff's argument to the contrary is spurious.

13. Plaintiff's argument that the ALJ erred in not considering the fact that decedent was registered as legally blind as of January 13, 2003 by the State Commission is equally unavailing. Although the ALJ is "not bound by the disability decisions by other governmental and nongovernmental agencies" he nevertheless "should explain the consideration given to these decisions." SSR 06-03p, 2006 WL 2329939, at *7 (S.S.A. Aug. 9, 2006); see also 20 C.F.R. § 404.1504 ("A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind . . . . is not binding on us."). However, as already discussed, Dr. Rietz's medical opinion is clear,

and the ALJ was not required to defer that opinion to that of the State Commission. See Briggs v. Astrue, No. 09-CV-1422 FJS/VEB, 2011 WL 2669476, at *15 (N.D.N.Y. Mar. 4, 2011) (no reasonable probability that state development services office's determination that plaintiff was disabled would change outcome of ALJ's decision); Francois v. Astrue, No. 09 Civ. 6625(HB), 2010 WL 2506720, at *5 (S.D.N.Y. June 21, 2010) (employer's decision to grant plaintiff disability retirement was not binding on Commissioner and did not provide grounds to reverse Commissioner's determination). Because 20 C.F.R. § 404.1581 clearly sets out specific statutory requirements that were here not met, remand is not warranted. This Court further notes that remanding this case would only result in the ALJ more explicitly stating why the State Commission's determination does not outweigh that of the treating physician, which, as already discussed, is typically binding, and would have no other effect. Under these circumstances, remand would serve no function. See Fitzgerald v. Astrue, No. 2:08-CV-170, 2009 WL 4571762, at *10-*11 (D. Vt. Nov. 30, 2009) (not remanding case despite ALJ's failure to properly consider VA disability consideration where no reasonable administrative fact finder could have resolved matter to reach different outcome); Peach v. Astrue, No. 08-CV-0741, 2009 WL 7113220, at *3 (N.D.N.Y. Dec. 3, 2009) (finding no error in Commissioner's failure to discuss agency report).

14. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the

Act.  Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:   March 15, 2012
           Buffalo, New York

                                                            /s/William M. Skretny
                                                            WILLIAM M. SKRETNY
                                                            Chief Judge
                                                            United States District Court